**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| NATURAL ALTERNATIVES INTERNATIONAL, INC., ROGER HARRIS, MARK DUNNETT, and KENNETH JOHANNSON, | ) | C.A. No. 09-626-GMS |
| Plaintiffs, | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| VITAL PHARMACEUTICALS, INC., and DNP INTERNATIONAL CO., INC., | ) | |

**FIRST AMENDED COMPLAINT**

Plaintiffs, Natural Alternatives International, Inc. ("NAII"), Roger Harris ("Harris"), Mark Dunnett ("Dunnett") and Kenneth Johannsson ("Johannsson)", for their complaint against defendants, Vital Pharmaceuticals, Inc., ("VPX") and DNP International Co., Inc., ("DNP") alleges as follows:

**PARTIES**

1. NAII is a Delaware corporation with its principal place of business in San Marcos, California.

2. Harris is a citizen of the United Kingdom with a residential address in Sulfolk, United Kingdom.

3. Dunnett is a citizen of the United Kingdom with a residential address in Sulfolk, United Kingdom.

4. Johannsson is a citizen of Sweden with a residential address in Vadstena, Sweden.

5. VPX is a Florida corporation with its principal place of business located at 15751 SW 41st Street, Suite 300, Davie, Florida, 33331. Its products and services are offered to and

may be purchased and/or used by citizens of Delaware. VPX owns, maintains and/or operates a website at www.vpxsports.com, the content of which is incorporated herein by reference.

6. DNP is a California corporation with its principal place of business located at 12802 Leffingwell Avenue, Bldg E, Santa Fe Springs, California, 90670. DNP supplies beta-alanine to nutritional supplements manufacturers in the United States. Its products and services are offered to and may be purchased and/or used by citizens of Delaware. DNP owns, maintains and/or operates a website at www.dnpint.com, the content of which is incorporated herein by reference.

## JURISDICTION AND VENUE

7. This is an action for patent infringement arising from Title 35 of the United States Code, 35 U.S.C. §§ 1 *et seq.*, the Lanham Act, 15 U.S.C. § 1051 *et seq.*, Delaware's Deceptive Trade Practices Act, 6 Del. Code § 2531, *et seq.*

8. Exclusive jurisdiction over this matter is conferred upon the Court pursuant to 28 U.S.C. §§ 1331, 1338, 1367, and 15 U.S.C. § 1121(a).

9. The exercise of personal jurisdiction over each defendant comports with the laws of the State of Delaware and the constitutional requirements of due process because the defendants transact business and/or offer to transact business within Delaware.

10. Venue is proper in this District under 28 U.S.C. §§ 1391, 1400(b).

## FACTS

11. NAII is a leading formulator, manufacturer and marketer of nutritional supplements and provides strategic partnering services to its customers. NAII's comprehensive partnership approach offers a wide range of innovative nutritional products and services to their clients including: scientific research, clinical studies, proprietary ingredients, customer-specific nutritional product formulation, product testing and evaluation, marketing management and

support, packaging and delivery system design, regulatory review and international product registration assistance.

12. NAII scientifically designs and customizes nutritional products based on the unique needs of individual clients. New products and formulas are researched and tested prior to full-scale production. NAII routinely produces pilot or sample runs of product formulation prototypes to ensure stability and/or efficacy and to determine ingredient interaction and prospective customer acceptance of the final product. NAII also directs and participates in clinical research studies to establish consumer benefits and scientific efficacy supporting both product claims and marketing initiatives.

13. NAII certifies that each raw material used meets or exceeds the requirements of the U.S. Food and Drug Administration (FDA), the U.S. Pharmacopoeia (USP) and the Therapeutic Goods Administration of Australia (TGA). Raw materials are also tested to ensure that they are free of harmful pesticides and herbicides and are compliant with state and federal requirements for heavy metal concentration. All of these tests are done by NAI to be in compliance with 21 CFR 111 requirements.

14. NAII's marketing and product development experts are accomplished in the areas of market research, supplement design, manufacturing, packaging, distribution, international product registration and regulatory compliance. NAII provides in-house graphic design capabilities and works with clients to create label designs, brochures, videos and other promotional tools to appropriately market its products. The combination of these components is part of a cohesive strategy designed to increase mass-market consciousness, boost brand awareness among the health-conscious consumers and facilitate expansion into new markets and channels of distribution.

15. NAII's success in the formulation, development, manufacturing and marketing of specialized products is predicated on its dedication to research and development, technology, science and state-of-the-art manufacturing. The comprehensive services NAII offers has established NAII as an innovator in the field of nutritional science.

16. NAII was the exclusive licensee and is now the owner by assignment of U.S. Patent No. 6,426,361 ("the '361 patent"), issued on or about July 30, 2002, entitled "Methods and compositions for increasing the anaerobic working capacity in tissues." A copy of the '361 patent is attached as Ex. 1 and incorporated by reference.

17. NAII was the exclusive licensee and is now the owner by assignment of U.S. Patent No. 6,172,098 ("the '098 patent"), issued on or about January 9, 2001, entitled "Methods and compositions for increasing the anaerobic working in tissues." A copy of the '098 patent is attached as Ex. 2 and incorporated by reference.

18. NAII was the exclusive licensee and is now the owner by assignment of U.S. Patent No. 5,965,596 ("the '596 patent"), issued on or about October 12, 1999, entitled "Methods and compositions for increasing the anaerobic working in tissues." A copy of the '596 patent is attached as Ex. 3 and incorporated by reference.

19. Harris is a co-inventor and former co-owner of the '361 patent, the '098 patent and the '596 patent, which he has assigned and previously exclusively licensed to NAII.

20. Dunnett is a co-inventor and former co-owner of the '361 patent, the '098 patent and the '596 patent, which he has assigned and previously exclusively licensed to NAII.

21. Johansson is a former co-owner of the '361 patent, the '098 patent and the '596 patent, which he has assigned and previously exclusively licensed to NAII.

22. NAII licenses the '361, '98 and '596 patents to Compound Solutions, Inc. ("CSI").

23. CSI provides beta-alanine to companies that include the beta-alanine in products for the nutritional supplements market.

24. CSI distributes beta-alanine in the United States. NAII derives its revenue in part from royalty payments made by CSI, where the royalty payments are directly tied to CSI sales of beta-alanine.

25. NAII competes with VPX and DNP and derives revenue from Carnosyn® Beta-alanine sales in the United States.

26. VPX is a supplier of sports nutrition supplements, including supplements containing beta-alanine and creatine. VPX provides instructions related to the use of sports nutrition supplements, including instructions related to the use and consumption of products containing beta-alanine and creatine.

27. VPX manufactures and sells products that contain beta-alanine, including without limitation: Power Pump 7™, NO-Shotgun MHF-1™, Anarchy™ – Pre-workout Matrix, NO-Synthesize® MHF-1, Power Shock™ Amino Nitrate, Stealth™ Protein Powder, Redline® Power Rush® and Redline Princess® Energy Drink.

28. United States Customs data indicates VPX imported beta-alanine to include in these infringing products from a Chinese company, Suzhou Vitajoy Bio-Tech Co. Ltd.

29. VPX makes, imports, offers for sale and sells products that fall within the scope of one or more claims of the '361 patent. In addition, VPX contributes to and induces others to infringe one or more claims of the '361 patent.

30. VPX makes, imports, offers for sale and sells products, and provides methods that fall within the scope of one or more claims of the '098 patent. In addition, VPX contributes to and induces others to infringe one or more claims of the '098 patent.

31. VPX makes, imports, offers for sale and sells products, and provides methods that fall within the scope of one or more claims of the '596 patent. In addition, VPX contributes to and induces others to infringe one or more claims of the '596 patent.

32. VPX is not licensed or authorized to use NAII's intellectual property for all of the products they sell or methods they teach.

33. On or about March 16, 2007, NAII provided VPX with actual notice of the patents-in-suit.

34. VPX advertises and markets its beta-alanine products to the public.

35. During all relevant times, VPX placed an advertisement in one or more national publications relating to, *inter alia*, beta-alanine, which represented that "Beta-Alanine is a hyper-performance ingredient **patented** to increase whole body creatine retention to crank out more sets and more muscle-blasting reps for increased lean mass!" (Emphasis added). VPX has made the same representation to the public on its website, http://www.vpxsports.com/sports-nutrition-supplements/pre-workout/no-shotgun.aspx.

36. VPX is not the owner or licensee of any patent that would cover VPX's products. It knew that it had no such patent rights. VPX made the claim that its products were patented knowing that the statement was false with the intent and purpose of deceiving the buying public and increasing its sales of beta-alanine products. As a result, its public advertisements, representations and statements that its beta-alanine products are patented are false and

misleading and, in violation of 35 U.S.C. § 292, are also falsely marked with the specific intent to deceive the public.

37. DNP is a global importer, supplier and distributor of raw ingredients to manufacturers in the nutritional supplement, food, beverage, cosmetic, animal nutrition and pharmaceutical industries. DNP imports more beta-alanine than any other ingredient supplier. DNP supplies beta-alanine to nutritional supplement manufacturers.

38. DNP markets and distributes beta-alanine containing products and provides information regarding the benefits of using beta-alanine containing products. (*See, e.g.*, July 2009 edition of Ingredient Times, at 4-6).

39. In May 2009, DNP issued a press release stating that it "continues to lead the nation in importing more Beta Alanine than any other ingredient supplier." (DNP, May 2009 edition of Ingredient Times at 2).

40. DNP expected to import more than 5,000 metric tons of food-type beta-alanine in 2009. DNP's importation of beta-alanine enables DNP to obtain an increased share of the bodybuilding market.

41. DNP makes, imports, offers for sale, and sells products that contribute to and induce others to infringe one or more claims of the '361 patent.

42. DNP makes, imports, offers for sale, and sells products that contribute to and induce others to infringe one or more claims of the '098 patent.

43. DNP makes, imports, offers for sale, and sells products that contribute to and induce others to infringe one or more claims of the '596 patent.

44. On or about March 13, 2009, DNP contacted NAII to explore the possibility of licensing NAII's patents. DNP, however, never agreed to license NAII's patents.

45. On or about May 1, 2009, DNP issued a press release and posted a copy on its website, which represented, in pertinent part, that:

> DNP Tops U.S. Beta Alanine Imports in Quantity and Quality
>
> SANTA FE SPRINGS, Calif. (May 1, 2009) As part of its **exclusive power product line, sourced from the largest Japanese manufacturer in the world**, DNP International continues to lead the nation in importing more Beta Alanine than any other ingredient supplier. This year, the company expects to source more than 5,000 metric tons of its food type Beta Alanine ingredient, which contains less heavy metal content than the standard industrial grade. Management believes that sourcing more quality Beta Alanine will be crucial in dictating an increased share of the bodybuilding market.
>
> **"We are proud to say we are the finest and only source for Japanese Beta Alanine in the U.S.,"** said David Ji, president of DNP International. "As a direct source to many power products like Beta Alanine, our goal is to solidify our ties in the bodybuilding industry by offering a quality ingredient with large quantities."
>
> Beta Alanine is a powerful, naturally occurring amino acid which can energize and improve workout capacities. Creatine Monohydrate combined with Beta Alanine can result in synergistic effects such [sic] lean mass gains, increased strength and weight loss. [Emphasis added.]

46. DNP's May and July 2009 Ingredient Times expressly represented that DNP's beta-alanine is of "Japanese Origin." The July edition contains the following:



47. DNP has made false and misleading statements, omits to state material facts, and is likely to cause confusion among consumers, including without limitation, that (a) DNP is the

"finest and only source for Japanese Beta Alanine in the U.S."; (b) all of DNP's beta-alanine is made and imported from Japan; (c) DNP has a higher grade or quality beta-alanine; and (d) DNP was the only source of beta-alanine in the United States.

48. DNP's statements are false and misleading. DNP is not the finest or only source for beta-alanine in the United States. NAII's Caronosyn® beta-alanine product is sold in the U.S. through a distributor. DNP's product is not higher grade or quality than NAII's product. The beta-alanine for DNP's products does not originate exclusively in Japan. For example, a search of a database tracking all imports by sea of beta-alanine shows that on December 6, 2009, DNP imported 11,535 kilograms of beta-alanine from China. Ex. 4. Import records also show that beta-alanine is being imported from Japan, but DNP is not identified as the importer. Ex. 5. DNP is therefore, not the only importer of beta-alanine from Japan. Alternatively, DNP is attempting to conceal importation of beta-alanine from Japan.

49. U.S. customers for beta-alanine products would read DNP's statements and would be likely confused and buy their beta-alanine from DNP.

50. The documents referred to herein are incorporated herein by reference.

**COUNT I**
**(Patent Infringement - VPX)**

51. The foregoing allegations of this complaint are incorporated by reference.

52. VPX has made, used, sold, offered for sale and/or imported products embodying the patented invention, thereby infringing, literally or under the doctrine of equivalents, one or more claims of the '361 patent, and will continue to do so unless enjoined therefrom.

53. VPX has made, used, sold, offered for sale and/or imported products embodying the patented invention, thereby infringing, literally or under the doctrine of equivalents, one or more claims of the '098 patent, and will continue to do so unless enjoined therefrom.

54. VPX has made, used, sold, offered for sale and/or imported products embodying the patented invention, thereby infringing, literally or under the doctrine of equivalents, one or more claims of the '596 patent, and will continue to do so unless enjoined therefrom.

55. VPX has contributed to the use, sale and/or offer for sale by others of its infringing products, methods and services.

56. VPX has induced the use, sale and/or offer for sale by others of its infringing products, methods and services.

57. VPX's infringement has been willful.

58. Plaintiffs have been irreparably harmed by VPX's acts of infringement and have suffered damages in an amount to be determined at trial.

**COUNT II**
**(Patent Infringement - DNP)**

59. The foregoing allegations of this complaint are incorporated by reference.

60. DNP has made, used, sold, offered for sale and/or imported products that contribute to and induce others to infringe one or more claims of the '361 patent, and will continue to do so unless enjoined therefrom.

61. DNP has made, used, sold, offered for sale and/or imported products that contribute to and induce others to infringe one or more claims of the '098 patent, and will continue to do so unless enjoined therefrom.

62. DNP has made, used, sold, offered for sale and/or imported products that contribute to and induce others to infringe one or more claims of the '596 patent, and will continue to do so unless enjoined therefrom.

63. DNP's infringement has been willful.

64. Plaintiffs have been irreparably harmed by DNP's acts of infringement and have suffered damages in an amount to be determined at trial.

**COUNT III**
**(False Marking - VPX)**

65. The foregoing allegations of this complaint are incorporated by reference.

66. VPX knowingly, willfully, and with intent to deceive the public, marked its products and/or product advertisements, literature, and website with a false patent marking stating that the products were patented.

67. As a direct and proximate result of the foregoing, VPX has violated and continues to violate 35 U.S.C. § 292 and should be fined the full amount of $500 for each offense.

**COUNT IV**
**(Lanham Act § 43(a) – VPX)**

68. The foregoing allegations of this complaint are incorporated by reference.

69. VPX's products are used, sold, and/or offered for sale in interstate and foreign commerce.

70. In connection with its goods or services, VPX has used one or more words, terms, names, symbols, or devices, alone or in combination, as well as false designations of origin, false or misleading descriptions or representations of fact, which are (a) likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of VPX with NAII, or as to the origin, sponsorship, or approval of its goods, services, or commercial activities by another person, and/or (b) in commercial advertising or promotion (including without limitation its website), VPX misrepresents the nature, characteristics, qualities, or geographic origin of its or VPX's goods, services, or commercial activities.

71. VPX knowingly and willfully misrepresented to the public that its beta-alanine products were patented.

72. VPX's misrepresentations were made in bad faith for the purpose of deceiving the public and harming its competition, including NAII.

73. The misrepresentations deceive or are likely to deceive those consumers and potential consumers of NAII's and VPX's products. Further, the misrepresentations are likely to influence the purchasing decisions of others and have cause injury or are likely to do so.

74. By reason of VPX's statements and conduct, it has willfully violated section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and NAII has suffered, and will continue to suffer damage to its business, reputation, and good will and has lost sales and profits that NAII would have made but for VPX's acts.

75. NAII has been irreparably harmed by VPX's acts in violation of the Lanham Act. As a direct and proximate result of the foregoing, NAII has suffered damages in an amount to be proven at trial.

**COUNT V**
**(Lanham Act § 43(a) – DNP)**

76. The foregoing allegations of this complaint are incorporated by reference.

77. DNP's products are used, sold, and/or offered for sale in interstate and foreign commerce.

78. In connection with its goods or services, DNP has used one or more words, terms, names, symbols, or devices, alone or in combination, as well as false designations of origin, false or misleading descriptions or representations of fact, which are (a) likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of DNP with NAII, or as to the origin, sponsorship, or approval of its goods, services, or commercial activities by

another person, and/or (b) in commercial advertising or promotion (including without limitation its website), DNP misrepresents the nature, characteristics, qualities, or geographic origin of its or NAII's goods, services, or commercial activities.

79. DNP knowingly and willfully misrepresented to the public, *inter alia*, that (a) DNP is the finest and only source for Japanese Beta Alanine in the U.S.; (b) all of DNP's beta-alanine is made and imported from Japan; (c) DNP has a higher grade or quality beta-alanine; and (d) DNP was the only source of beta-alanine in the United States.

80. DNP's commercial messages and statements are either literally false or literally true or ambiguous but have the tendency to deceive consumers. Moreover, DNP's advertising claims were unsubstantiated and false.

81. DNP's misrepresentations were material, made in bad faith for the purpose of deceiving the public and harming its competition, including NAII.

82. The misrepresentations deceive or are likely to deceive those consumers and potential consumers of NAII's and VPX's or DNP's products. Further, the misrepresentations are likely to influence the purchasing decisions of others and have cause injury or are likely to do so.

83. By reason of DNP'S statements and conduct, DNP has willfully violated section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and NAII has suffered, and will continue to suffer damage to its business, reputation, and good will and has lost sales and profits that NAII would have made but for DNP'S acts.

84. NAII has been irreparably harmed by DNP's acts in violation of the Lanham Act and has suffered damages in an amount to be determined at trial.

**COUNT VI**
**(Delaware Deceptive Trade Practices - VPX)**

85. The foregoing allegations of this complaint are incorporated by reference.

86. VPX knowingly and willfully misrepresented to the public that its beta-alanine products were patented.

87. VPX is not an assignee or licensee to beta-alanine technology, and its misrepresentations were made in bad faith for the purpose of deceiving the public and harming its competition, including NAII.

88. VPX has made false and misleading statements and has omitted statements of material fact to the public.

89. VPX has engaged in other conduct that creates a likelihood of confusion or of misunderstanding regarding the goods or services supplied by NAII.

**COUNT VII**
**(Delaware Deceptive Trade Practices - DNP)**

90. The foregoing allegations of this complaint are incorporated by reference.

91. DNP has knowingly made false and misleading statements and has omitted statements of material fact to the public.

92. DNP's misrepresentations were made in bad faith for the purpose of deceiving the public and harming its competition.

93. DNP represents that goods or services are of a particular standard, quality, or grade.

94. DNP has engaged in other conduct that creates a likelihood of confusion or of misunderstanding regarding the goods or services supplied by NAII.

**COUNT VI**
**(Delaware Deceptive Trade Practices - VPX)**

85. The foregoing allegations of this complaint are incorporated by reference.

86. VPX knowingly and willfully misrepresented to the public that its beta-alanine products were patented.

87. VPX is not an assignee or licensee to beta-alanine technology, and its misrepresentations were made in bad faith for the purpose of deceiving the public and harming its competition, including NAII.

88. VPX has made false and misleading statements and has omitted statements of material fact to the public.

89. VPX has engaged in other conduct that creates a likelihood of confusion or of misunderstanding regarding the goods or services supplied by NAII.

**COUNT VII**
**(Delaware Deceptive Trade Practices - DNP)**

90. The foregoing allegations of this complaint are incorporated by reference.

91. DNP has knowingly made false and misleading statements and has omitted statements of material fact to the public.

92. DNP's misrepresentations were made in bad faith for the purpose of deceiving the public and harming its competition.

93. DNP represents that goods or services are of a particular standard, quality, or grade.

94. DNP has engaged in other conduct that creates a likelihood of confusion or of misunderstanding regarding the goods or services supplied by NAII.

95. DNP has violated the Delaware Deceptive Trade Practices Act, 6 Del. Code § 2531, *et seq.*, and NAII has suffered, and will continue to suffer, damage to its business, reputation, and goodwill.

**REQUEST FOR RELIEF**

Plaintiffs respectfully request that this Court enter judgment against VPX and DNP and that the following relief be granted:

a. judgment that defendants have infringed claims of the '361 patent (35 U.S.C. § 271);

b. judgment that defendants' infringement of claims of the '361 patent was willful;

c. judgment that defendants have infringed claims of the '098 patent (35 U.S.C. § 271);

d. judgment that defendants' infringement of claims of the '098 patent was willful;

e. judgment that defendants have infringed claims of the '596 patent (35 U.S.C. § 271);

f. judgment that defendants' infringement of claims of the '596 patent was willful;

f. injunction against continued infringement (35 U.S.C. § 283);

g. damages for past infringement (35 U.S.C. § 284);

h. increased and trebled damages for willful infringement (35 U.S.C. § 284);

i. imposition of a constructive trust on all proceeds from the sale of accused products;

j. judgment that defendant VPX has falsely marked its products in violation of 35 U.S.C. § 292 and that VPX shall be fined the full amount of $500 for every such offense as provided by 35 U.S.C. § 292(a);

k. damages for defendants' violation of the Lanham Act section 43(a);

l. treble damages and statutory damages;

m. a preliminary and permanent injunction against continued violations of the Lanham Act;

n. judgment that defendants have violated Delaware's law of deceptive trade practices;

o. injunction against continued deceptive trade practices and damages for past violations;

p. punitive damages allowed by law;

q. attorneys' fees as allowed by law, including without limitation, 35 U.S.C. § 285 (patent infringement) and 15 U.S.C. § 1117(a) (Lanham Act);

r. costs pursuant to Fed. R. Civ. P. 54(d) or otherwise provided by law; and

s. such other relief as the Court deems just and appropriate under the circumstances.

**JURY DEMAND**

Plaintiffs hereby demand a jury trial on all issues so triable.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

By: */s/ David E. Moore*
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Plaintiffs Natural Alternatives International, Inc., Roger Harris, Mark Dunnett and Kenneth Johannsson*

OF COUNSEL:

Richard J. Oparil
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC 20037
(202) 457-6000

Scott Chambers, Ph.D.
Kevin M. Bell
William J. McKeague, Ph.D.
Lacy Kolo, Ph.D.
PATTON BOGGS, LLP
8484 Westpark Drive, Ninth Floor
McLean, Virginia 22102
(703) 744-8000

Dated: January 6, 2011
995620 / 34341

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on January 6, 2011, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on January 6, 2011, the attached document was electronically mailed to the following person(s)

John W. Shaw
Karen E. Keller
Young Conaway Stargatt & Taylor, LLP
1000 West Street
Brandywine Building, 17th Floor
Wilmington, DE 19801
jshaw@ycst.com
kkeller@ycst.com
*Attorneys for DNP International Co., Inc.*

M. Andrew Woodmansee
James J. Cekola
Morrison & Foerster LLP
12531 High Bluff Drive
Suite 100
San Diego, CA 92130-2040
woodmansee@mofo.com
jcekola@mofo.com
*Attorneys for DNP International Co., Inc.*

Francis DiGiovanni
Keith A. Walter
Connolly Bove Lodge & Hutz LLP
1007 N. Orange Street
Wilmington, DE 19899
fdigiovanni@cblh.com
kwalter@cblh.com
*Attorneys for Vital Pharmaceuticals, Inc.*

*/s/ David E. Moore*
Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

947955/34341