**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| NATURAL ALTERNATIVES INTERNATIONAL, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> VITAL PHARMACEUTICALS, INC., *et al.* <br><br> Defendants. | )<br>)<br>)<br>)<br>)　　C.A. No.  09-626-GMS<br>)<br>)<br>)<br>)<br>)<br>) |
| VITAL PHARMACEUTICALS, INC., <br><br> Counterclaim/Third-Party Plaintiff, <br><br> v. <br><br> NATURAL ALTERNATIVES INTERNATIONAL, INC., and COMPOUND SOLUTIONS, INC., <br><br> Counterclaim/Third-Party Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' OPPOSITION TO DEFENDANT
DNP INTERNATIONAL CO., INC.'S MOTION TO DISMISS**

OF COUNSEL:

Richard J. Oparil
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC  20037
(202) 457-6000

Scott Chambers, Ph.D.
Kevin M. Bell
William J. McKeague, Ph.D.
Lacy Kolo, Ph.D.
PATTON BOGGS, LLP
8484 Westpark Drive, Ninth Floor
McLean, Virginia 22102
(703) 744-8000

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza 6th Floor
1313 N. Market Street
Wilmington, DE  19899
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Plaintiffs Natural Alternatives
International, Inc. Roger Harris, Mark
Dunnett and Kenneth Johannsson*

Dated:  February 17, 2011
1001733 / 34341

## TABLE OF CONTENTS

INTRODUCTION ...............................................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS ......................................................2

ARGUMENT ...................................................................................................................5

I.      Legal Standards...................................................................................................5

        A.      Federal Rule Of Civil Procedure 12(b)(6) ..............................................5

        B.      Federal Rule Of Civil Procedure 12(d) ...................................................6

        C.      Federal Rule Of Civil Procedure 12(b)(1) ..............................................7

II.     Count II Adequately Alleges Indirect Infringement By DNP. .............................7

        A.      DNP's Motion Is Precluded By The Stipulation And Order. ....................7

        B.      The Amended Complaint Alleges The Requisite Knowledge Required To
                State A Claim For Indirect Infringement Against DNP.............................8

        C.      The Amended Complaint Alleges Facts Sufficient To Plead Additional
                Elements Of NAII's Claims For Indirect Infringement...........................10

III.    NAII's Claims Under The Lanham Act § 43(a) And The Delaware Deceptive
        Trade Practices Act Should Not Be Dismissed Because NAII Has Prudential
        Standing. ...........................................................................................................12

        A.      NAII Has Standing Because NAII Is DNP's Commercial Competitor And
                Was Harmed By DNP's False Statements. .............................................12

        B.      The Second Factor Weighs In NAII's Favor Because Beta-Alanine Sales
                Directly Effect NAII's Revenue. ...........................................................14

        C.      NAII Satisfies The Third Factor Because NAII Is A Surrogate For A
                Direct Competitor, And Therefore Is In Commercial Competition With
                DNP.......................................................................................................15

        D.      The Fourth Factor Weighs In NAII's Favor Because NAII's Damages Are
                Not Highly Speculative..........................................................................16

        E.      The Fifth Factor Weighs In NAII's Favor Because There Is Minimal Risk
                Of Multiple Plaintiffs In The Distribution Chain. .................................16

IV.     The DDTPA Claim Should Not Be Dismissed Because NAII Has Prudential
        Standing Under Section 43(A)............................................................................17

V.      The Lanham Act And DDTPA Claims Should Not Be Dismissed. ...................................17

     A.      NAII Adequately Pled A Claim For False Designation Of Origin Under Lanham Act § 43(a)(1)(A) (Count V) Because NAII Has Prudential Standing. ........................................................................................................17

     B.      NAII Sufficiently Pled A Claim For False Advertising Under Section 43(a)(1)(B) Of The Lanham Act (Count VII)........................................................18

     C.      NAII Adequately Pled Count VII For Violation Of The DDTPA.........................19

CONCLUSION.....................................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*American Home Products Corp. v. Johnson & Johnson*,
654 F. Supp. 568 (S.D.N.Y. 1987) ......................................................................19

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..............................................................................................11

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
377 U.S. 476 (1964)................................................................................................9

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009).......................................................................................6, 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................................5, 6, 10

*Castrol Inc. v. Pennzoil Co.*,
987 F.2d 939 (3d Cir. 1993).............................................................................18, 19

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..............................................................................................11

*Clinton v. City of New York*,
524 U.S. 417 (1998)..............................................................................................17

*Conley v. Gibson*,
355 U.S. 41 (1957)................................................................................................18

*Conte Bros. Auto, Inc. v. Quaker State-Slick 50, Inc.*,
165 F.3d 221 (3d Cir. 1998)............................................................... *passim*

*Cook Drilling Corp. v. Halco Am., Inc.*,
No. Civ. A 01-2940, 2002 WL 84532 (E.D. Pa. Jan. 22, 2002) ..............................17

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
539 U.S. 23 (2003)................................................................................................20

*Doe v. Goldstein's Deli*,
No. 02-1361, 2003 U.S. App. Lexis 25858 (3d Cir. Dec. 19, 2003) ........................7

*DSU Med. Corp. v. JMS Co., Ltd.*,
471 F.3d 1293 (Fed. Cir. 2006).............................................................................9

*Dynacore Holdings v. U.S. Philips*,
    363 F.3d 1263 (Fed. Cir. 2004)................................................................11

*Enzo Life Scis., Inc. v. Digene Corp.*,
    295 F. Supp. 2d 424 (D. Del. 2003).........................................................19

*Erickson v. Pardus*,
    551 U.S. 89 (2007)...................................................................................5

*Evco Tech. & Dev. Co. v. Buck Knives, Inc.*,
    No. 05-6198, 2006 WL 2773421 (E.D. Pa. 2006) ....................................13

*Fotomedia Techs., LLC v. AOL, LLC*,
    No. Civ. A. 2:07CV255, 2008 WL 4135906 (E.D. Tex. Aug. 29, 2008) ....................6, 10, 12

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009)..................................................................5, 6

*Freedom Card, Inc. v. JP Morgan Chase & Co.*,
    432 F.3d 463 (3d Cir. 2005)....................................................................18

*Gould Elecs. Inc. v. U.S.*,
    220 F.3d 169 (3d Cir. 2000)......................................................................7

*Joint Stock Soc'y v. UDV N. Am., Inc.*,
    266 F.3d 164 (3d Cir. 2001)........................................................15, 16, 17

*Logan Farms v. HBH, Inc. DE*,
    282 F. Supp. 2d 776 (S.D. Ohio 2003) ....................................................13

*Logan v. Burgers Ozark Country Cured Hams*,
    263 F.3d 447 (5th Cir. 2001) ...................................................................13

*McZeal v. Sprint Nextel Corp.*,
    501 F.3d 1354 (Fed. Cir. 2007).................................................................6

*Monsanto Co. v. Syngenta Seeds, Inc.*,
    443 F. Supp. 2d 648 (D. Del. 2006)....................................................19, 20

*Mortensen v. First Fed. Sav. and Loan Ass'n*,
    549 F.2d 884 (3d Cir. 1977).......................................................................7

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*,
    290 F.3d 578 (3d Cir. 2002)......................................................................18

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
    988 F.2d 1192 (3d Cir. 1993)......................................................................6

*Pernod Ricard USA LLC v. Bacardi U.S.A., Inc.,*
    505 F. Supp. 2d 245 (D. Del. 2007)..................................................................13, 14, 16, 17

*Robert Bosch LLC v. Pylon Mfg. Corp.,*
    632 F. Supp. 2d 362 (D. Del. 2009)..................................................................18

*S.O.I.TEC. Silicon On Insulator Techs., S.A. v. MEMC Elec. Materials, Inc.,*
    C.A. No. 08-292-SLR, 2009 WL 423989 (D. Del. Feb. 20, 2009)........................5, 6

*Serbin v. Ziebart Int'l Corp.,*
    11 F.3d 1163 (3d Cir. 1993)..................................................................15

*Symbol Techs., Inc. v. Hand Held Prods., Inc.,*
    C.A. No. 03-102-SLR, 2003 WL 22750145 (D. Del. Nov. 14, 2003)....................12

*Thorn v. Reliance Van Co., Inc.,*
    736 F.2d 929 (3d Cir. 1984)..................................................................12, 16

*Uni-Marts, LLC v. NRC Realty Advisors, LLC,*
    426 B.R. 77 (D. Del. 2010)..................................................................7

*United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.,*
    149 F.3d 227 (3d Cir. 1998)..................................................................19

**STATUTES**

6 Del. C. § 2532(a)..................................................................20

6 Del. C. § 2533(a)..................................................................20

35 U.S.C. § 271(b)..................................................................9, 10

35 U.S.C. § 271(c)..................................................................10

**RULES**

Fed. R. Civ. P. 8(a)..................................................................1, 6

Fed. R. Civ. P. 12(b)(1)..................................................................7

Fed. R. Civ. P. 12(b)(6)..................................................................2, 5, 6, 18

Fed. R. Civ. P . 12(d)..................................................................11

Fed. R. Civ. P. 15(a)(2)..................................................................8

Fed. R. Civ. P. 56..................................................................1, 7, 11

## **INTRODUCTION**

Plaintiffs (collectively, hereafter "NAII") file this opposition to Defendant DNP International Co., Inc.'s ("DNP") Motion to Dismiss First Amended Complaint and Brief in Support (D.I. 58). DNP initially filed its motion to dismiss in March 2010, but subsequently withdrew the motion after the Court held a November 1, 2010 status conference, urged the parties to resolve the dismissal motions, and the parties agreed in a Stipulation to grant NAII leave to file a First Amended Complaint, which the Court entered as an Order. (D.I. 52). DNP reviewed the proposed First Amended Complaint prior to filing, but nonetheless files this motion to dismiss based on purported insufficient pleading. DNP moves to dismiss claims for indirect infringement, issues not raised in its prior motion to dismiss and on which it did not reserve its rights in the Stipulation and Order.

Notwithstanding, NAII's indirect infringement claims against DNP fully comply with Fed. R. Civ. P. 8(a). NAII's Amended Complaint contains more than adequate factual allegations regarding DNP's intent and knowledge of the patents-in-suit. The Amended Complaint plausibly pleads that DNP induces and contributes to its customers' infringement of the patents-in-suit. Moreover, DNP relies on facts outside the Amended Complaint to support its arguments. DNP has thus converted its motion into one for summary judgment under Fed. R. Civ. P. 56, in contradiction of the Scheduling Order. (D.I. 37).

Further, NAII has prudential standing to assert claims for violation of section 43(a) of the Lanham Act because NAII satisfies the Third Circuit five-factor test. NAII has a commercial interest in the beta-alanine market, derives revenue from beta-alanine sales, and is a horizontal competitor. NAII's damages are unavoidable and there is minimal risk of multiple plaintiffs. NAII also has sufficiently pled the Lanham Act violation because the Amended Complaint alleges adequate facts to allow DNP to submit a proper defense. Finally, NAII has pled the

Delaware Deceptive Trade Practices Act ("DDTPA") violation sufficiently.  DNP's motion to dismiss should be denied.

## NATURE AND STAGE OF THE PROCEEDINGS

NAII brought suit against DNP and Vital Pharmaceuticals, Inc. ("VPX") on August 20, 2009 for infringement of three patents, U.S. Patent Nos. 6,426,361 ('361"); 6,172,098 ('098); and 5,965,596 ('596) (the "patents-in-suit").  These patents claim, *inter alia*, compositions and methods that include or use beta-alanine .

DNP initially challenged NAII's standing to bring its patent infringement claims and also moved to dismiss for lack of standing and failure to state a claim.  (D.I. 23).  NAII subsequently filed a motion for leave to amend its complaint (D.I. 29).  VPX did not oppose the motion for leave, but DNP did.  The Court held a status conference on November 1, 2010 and instructed the parties to confer regarding the pending motions and to try to resolve the motions.  NAII provided a proposed amended complaint for VPX and DNP's review and comment, to comply with the Court's instruction to resolve issues that would lead to the filing of additional Rule 12(b)(6) motions.  (Declaration of Richard J. Oparil ("Oparil Decl.") ¶ 3, 4, 7 & Ex. 1).  The parties agreed on a stipulation, in which defendants and NAII agreed to withdraw their motions to dismiss and for leave to file an amended complaint, respectively.  (D.I. 52).  DNP and VPX also consented to NAII's filing of the Amended Complaint, attached as an exhibit to the stipulation. (*Id.*; D.I. 53).  Further, defendants agreed not to contest NAII's standing to bring its patent infringement claims, and only reserved the right to move, answer, or otherwise respond to Counts III-VII of the Amended Complaint, NAII's claims for false marking (against VPX) and violations of the Lanham Act and the DDTPA (against DNP and VPX).  On January 6, 2011, the Court entered the Stipulation as an Order.  Notwithstanding the stipulation, DNP now moves pursuant to Rule 12(b)(6) to dismiss the Amended Complaint on Counts I and II for patent

infringement, though the parties had seemingly resolved issues pertaining to these Counts. DNP also renews its motion to dismiss under Rules 12(b)(1) and 12(b)(6) in regards to NAII's Lanham Act and DDTPA claims.

## SUMMARY OF ARGUMENT

1.     The Amended Complaint sets forth specific facts to adequately allege that DNP induced and contributed to infringement of the patents-in-suit.

2.     As a commercial competitor of DNP, NAII has prudential standing to plead and has pled that DNP's false and misleading statements caused and continue to cause NAII direct injury: satisfying standing requirements for its Lanham Act and DDTPA claims.

3.     NAII has prudential standing and set forth sufficient facts to plead Counts V and VII for violations of the Lanham Act and the DDTPA.

## STATEMENT OF FACTS

NAII is a leading formulator, manufacturer and marketer of nutritional supplements and provides strategic partnering services to its customers. (D.I. 53 ¶ 11). It was the exclusive licensee and is now the owner of the patents-in-suit.[1] (*Id*. ¶ 16-18). NAII licenses the patents-in-suit to Compound Solutions, Inc. ("CSI"), who distributes beta-alanine in the United States to companies that include the beta-alanine in products for the nutritional supplements market. (*Id*. ¶ 22-24). NAII competes with defendants DNP and VPX and derives revenue from royalty payments made by CSI, where the royalty payments are directly tied to CSI's sales of Carnosyn® Beta-alanine in the United States. (*Id*. ¶ 24-25).

---

[1] Roger Harris, Mark Dunnett and Kenneth Johannson, the co-inventors, and former co-owners of the patents-in-suit, were joined as plaintiffs with NAII to resolve defendants' motions to dismiss on patent standing.

DNP is a global importer, supplier and distributor of raw ingredients and supplies beta-alanine to nutritional supplement manufacturers.  (*Id.* ¶ 37).  DNP imports more beta-alanine than any other ingredient supplier. (*Id.*) In 2009, DNP expected to import more than 5,000 metric tons of food-type beta-alanine. (*Id.* ¶ 40). DNP makes, imports, offers for sale, and sells products that contribute to and induce others to infringe one or more claims of the patents-in-suit.  (*Id.* ¶ 41-43).  On March 13, 2009, DNP contacted NAII to explore the possibility of licensing NAII's patents.  (*Id.* ¶ 44).  DNP, however, never agreed to license NAII's patents.  (*Id.*).

On May 1, 2009, DNP issued a press release and posted a copy on its website, which represented, in pertinent part, that:

> DNP Tops U.S. Beta Alanine Imports in Quantity and Quality
>
> SANTA FE SPRINGS, Calif. (May 1, 2009) As part of its **exclusive power product line, sourced from the largest Japanese manufacturer in the world**, DNP International continues to lead the nation in importing more Beta Alanine than any other ingredient supplier. This year, the company expects to source more than 5,000 metric tons of its food type Beta Alanine ingredient,…. Management believes that sourcing more quality Beta Alanine will be crucial in dictating an increased share of the bodybuilding market.
>
> **"We are proud to say we are the finest and only source for Japanese Beta Alanine in the U.S.,"** said David Ji, president of DNP International. "As a direct source to many power products like Beta Alanine, our goal is to solidify our ties in the bodybuilding industry by offering a quality ingredient with large quantities." [*Id.* ¶ 45, emphasis added].

DNP also expressly represented that DNP's beta-alanine is of "Japanese Origin" in the May and July 2009 Ingredient Times.  (Id. ¶ 46).

The statements that (a) DNP is the "finest and only source for Japanese Beta Alanine in the U.S."; (b) all of DNP's beta-alanine is made and imported from Japan; (c) DNP has a higher quality beta-alanine; and (d) DNP was the only source of beta-alanine in the United States, are false and misleading. (*Id.* ¶ 47).  DNP is not the finest or only source for beta-alanine in the United States.  (*Id.* ¶ 48).  NAII's Caronosyn® beta-alanine product is sold in the U.S. through a

distributor.  (*Id.*).  DNP's product is not higher grade or quality than NAII's product.  (*Id.*).  The beta-alanine for DNP's products does not originate exclusively in Japan.  (*Id.*).  For example, a search of a database tracking all imports by sea of beta-alanine shows that on December 6, 2009, DNP imported 11,535 kilograms of beta-alanine from China.  (*Id.*, Ex. 4 to D.I. 53).  While import records show that beta-alanine is being imported from Japan, DNP is **not** identified as the importer.  (*Id.*, Ex. 5 to D.I. 53).  DNP is **not** the only importer of beta-alanine from Japan.  (*Id.*).  Alternatively, DNP is attempting to conceal importation of beta-alanine from Japan.  (*Id.*).  U.S. customers for beta-alanine products would read DNP's statements and would be likely confused and buy beta-alanine from DNP.  (*Id.* ¶ 49).  NAII has stated claims against DNP for violation of section 43(a) of the Lanham Act and the Delaware Deceptive Trade Practices Act.  (*Id.* ¶¶ 77-84, 91-95).

## ARGUMENT

### I.  Legal Standards

#### A.  Federal Rule Of Civil Procedure 12(b)(6)

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court accepts all of a complaint's factual allegations as true and construes them in the light most favorable to the plaintiff.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).  The complaint need only contain a short and plain statement of the claim showing that the pleader is entitled to relief "to give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The plaintiff is not required to set forth detailed factual allegations:  such factual allegations need only "be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."  *S.O.I.TEC. Silicon On Insulator Techs., S.A. v. MEMC Elec. Materials, Inc.*, C.A. No. 08-292-SLR, 2009 WL 423989, at *1 (D.

Del. Feb. 20, 2009) (quoting *Twombly*, 550 U.S. at 545).   Further, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). "This 'plausibility' determination will be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 129 S. Ct. 1950 (2009)).

The Federal Circuit has held that Federal Rules of Civil Procedure Form 18 meets the *Twombly* pleading standard. *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356-57 (Fed. Cir. 2007).   The substantive allegations contained in Form 18 are "that defendant infringes by 'making, selling, and using electric motors that embody the patented invention'; no further detail is provided." *S.O.I.TEC*, 2009 WL 43989, at *2 (quoting Form 18).   The "plausibility" pleading standard established by *Twombly* and *Iqbal* did not change the notice pleading requirement under Rule 8(a). *McZeal*, 501 F.3d at 1357 n.4.   Courts have applied *Twombly* in upholding indirect infringement claims pled in compliance with Form 18. *Fotomedia Techs., LLC v. AOL, LLC*, No. Civ. A 2:07CV255, 2008 WL 4135906, at *2 (E.D. Tex. Aug. 29, 2008).   Moreover, the Third Circuit has held that "[e]ven post-*Twombly*, it has been noted that a plaintiff is not required to establish the elements of a prima facie case but instead, need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler*, 578 F.3d at 213 (internal quotations and citations omitted).

### B.   **Federal Rule Of Civil Procedure 12(d)**

"Courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" when reviewing a motion to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 988 F.2d 1192, 1196 (3d Cir. 1993). However, pursuant to Fed. R. Civ. P. 12(d), "[w]hen a motion to dismiss filed pursuant to Rule

12(b)(6) contains and relies on matters outside the pleadings, not excluded by the Court, it must be treated as one for summary judgment under Rule 56." *Uni-Marts, LLC v. NRC Realty Advisors, LLC*, 426 B.R. 77, 82 (D. Del. 2010).

### C.     Federal Rule Of Civil Procedure 12(b)(1)

Under Fed. R. Civ. P. 12(b)(1), a party may file a motion to dismiss for a lack of subject matter jurisdiction.  "At issue in a factual 12(b)(1) motion is the trial court's jurisdiction -- its very power to hear the case . . ." *Doe v. Goldstein's Deli*, No. 02-1361, 2003 U.S. App. Lexis 25858, at *3 (3d Cir. Dec. 19, 2003) (citing *Mortensen v. First Fed. Sav. and Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977)).  A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction.  *Gould Elecs. Inc. v. U.S.*, 220 F.3d 169, 178 (3d Cir. 2000) (citing *Mortensen*, 549 F.2d at 891).  In reviewing a facial attack, the court must only consider the complaints, allegations and documents referenced and attached thereto, in the light most favorable to the plaintiff.  *Gould,* 220 F.3d at 178.  In reviewing a factual attack, the court may consider evidence outside the pleadings.  *Id*.

## II.     COUNT II ADEQUATELY ALLEGES INDIRECT INFRINGEMENT BY DNP.

### A.     DNP's Motion Is Precluded By The Stipulation And Order.

In response to the Court's direction during the November 1, 2010 teleconference, the parties conferred on ways to resolve the then-pending motions to dismiss and for leave to file an amended complaint.  NAII provided DNP and VPX with a draft revised amended complaint. After a number of discussions by telephone and email, the parties reached an agreement.  (Oparil Decl. ¶ 3-5).  The Stipulation and Order provides that:

> 1.     NAI hereby withdraws its Motion for Leave to File Amended Complaint (D.I. 29).  DNP's Opposition to NAI's Motion for Leave to File Amended Complaint (D.I. 30) is moot.

2.     Pursuant to Fed. R. Civ. P. 15(a)(2), VPX and DNP hereby consent to NAI's filing of a First Amended Complaint that is attached hereto as Exhibit A. The First Amended Complaint shall have an effective date of June 10, 2010, *i.e.*, the six year statutory limit for NAI to seek past damages shall be June 10, 2010.

3.     VPX and DNP hereby withdraw their motions to dismiss the original complaint (D.I. 17, 23).

4.     VPX and DNP will not contest plaintiffs' standing to bring the patent infringement claims (Counts I and II) in the First Amended Complaint.  VPX and DNP reserve their rights to move, answer, or otherwise respond to the other claims (Counts III-VII) in the First Amended Complaint.

(D.I. 53).  The Court entered the Stipulation as an Order on January 6, 2011.

The Stipulation was intended to resolve the motions to dismiss.  DNP only reserved a right to move with respect to the Lanham Act and Delaware Deceptive Trade Practices Act claims.  (*Id.* ¶ 9).

DNP's motion to dismiss Count II of the First Amended Complaint is thus contrary to the letter and spirit of the Stipulation and Order.  Further, DNP's motion rests on an argument that the First Amended Complaint does not adequately allege facts supporting a claim for indirect infringement.  Neither defendant raised this issue in their original motions to dismiss.  Nor did they raise any pleading issue about indirect infringement after reviewing NAII's proposed amended complaint.  (Oparil Decl. ¶ 6).  Had they done so, the issue could have been addressed without the need for judicial intervention. DNP's motion to dismiss on this new ground should not be heard.

**B.     The Amended Complaint Alleges The Requisite Knowledge Required To State A Claim For Indirect Infringement Against DNP.**

DNP's motion should be denied in its entirety because the Amended Complaint alleges specific facts that make it at least plausible that DNP actively induced its customers to infringe the patent-in-suit and contributed to their infringement.

The Amended Complaint sets forth specific allegations which plausibly demonstrate DNP knew about the patents-in-suit and that its actions induced and contributed to infringement. Liability for inducing infringement under 35 U.S.C. § 271(b) requires "that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements." *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006). "The requirement that the alleged infringer knew or should have known his actions would induce actual infringement necessarily includes the requirement that he or she knew of the patent." *Id.* Likewise, liability for contributory infringement requires "a showing that the alleged contributory infringer knew that the combination for which his component was especially designed was both patented and infringing." *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964).

DNP's argument that the Amended Complaint does not adequately allege knowledge of the patents-in-suit and specific intent to induce infringement is without merit. The Amended Complaint sufficiently pleads DNP's knowledge of the patents-in-suit. In paragraph 44, NAII alleges that DNP contacted NAII on or about March 13, 2009 "to explore the possibility of licensing NAII's patents." (D.I. 53). Notably, DNP's motion does not deny that it contacted NAII regarding licensing the patents-in-dispute prior to the filing of this action. Instead, DNP highlights language from its own advertisement, referenced in the Amended Complaint, which confirms that DNP was not only aware of the patents-in-suit, but also had knowledge that their products could be used to infringe the patents. (*Id.*). The same advertisement also advertises the benefit of using DNP's beta-alanine in combinations that constitute the direct infringement alleged in the Amended Complaint. Thus, NAII has clearly and sufficiently pled the requisite knowledge by DNP for both claims of inducing and contributing to infringement.

**C.** **The Amended Complaint Alleges Facts Sufficient To Plead Additional Elements Of NAII's Claims For Indirect Infringement.**

DNP wrongly asserts that the Amended Complaint is inadequate for failure to parrot the statutory language from 35 U.S.C. § 271(b), that DNP acted with specific intent to induce infringement, and 35 U.S.C. § 271(c), that its accused products are not capable of "substantial noninfringing use" for asserting contributory infringement. Such allegations are contrary to *Twombly* and *Iqbal*, which admonish plaintiffs to avoid merely quoting the legal elements of their causes of action. *Twombly*, 550 U.S. at 545; *Iqbal*, 129 S. Ct. at 1949. By invoking § 271(b) and alleging that DNP induces infringement of the patents-in-suit, the Amended Complaint necessarily implies that DNP acted with specific intent. Likewise, by invoking § 271(c) in alleging contributory infringement, the Amended Complaint necessarily implies that the accused products are incapable of substantial noninfringing use. "[N]either the patent infringement pleading form nor the holdings from the Federal Circuit require the pleading of each individual element of a claim for indirect infringement." *Fotomedia Techs.*, 2008 WL 4135906, at *2. DNP's arguments regarding the pleading of these elements should therefore be rejected. Further, the Amended Complaint contains specific factual allegations of DNP's knowledge of the patents-in-suit, its knowledge that it induced and contributed to infringement through the sale of its products, and its advertisement of the benefit of combining its product in such a way to constitute infringement. (D.I. 53 ¶¶ 38, 41-46). DNP's arguments in this regard should therefore be rejected.

DNP relies on facts outside the Amended Complaint in moving to dismiss NAII's infringement claims by listing alleged uses for beta-alanine not contained in the Amended Complaint. (D.I. 58 at 9). To the extent DNP relies on these and other facts outside of the Amended Complaint, DNP's motion should be treated as a motion for summary judgment under

Fed. R. Civ. P. 56.  *See* Fed. R. Civ. P. 12(d).   In addition, the alleged other uses are not supported by competent affidavits or documentary evidence to show that these are "substantial, noninfringing uses", such as a comparison of the amount of beta-alanine sold for these alleged other uses compared to the amount sold that infringes the patents-in-suit.  Thus, NAII is not obligated to come forward with rebuttal evidence.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57 (1986).  The Amended Complaint Provides Sufficient Notice Of Direct Infringers And Infringing Products To Assert Claims For Indirect Infringement.

DNP's argument that the Amended Complaint must be dismissed for failure to identify third party direct infringers, or to more specifically identify the accused products, is without merit.  Paragraphs 26-36 of the Amended Complaint allege in detail the direct infringement of defendant VPX, a customer of DNP.  The Amended Complaint also identifies specific accused products manufactured by VPX which contain beta-alanine, the product DNP uses to induce and contribute to infringement by selling to its customers.  (D.I. 53 ¶ 27).  The Amended Complaint also identifies additional DNP customers as direct infringers, claiming that "DNP makes, imports, offers for sale, and sells products that contribute to and induce others to infringe" the patents-in-suit.  (*Id.* ¶¶ 41-43). "Plaintiffs who identify an entire category of infringers (*e.g.*, the defendant's customers) may cast their theories of vicarious liability more broadly, and may consequently seek damages or injunctions across the entire category." *Dynacore Holdings v. U.S. Philips*, 363 F.3d 1263, 1274 (Fed. Cir. 2004).

DNP wrongly argues that NAII's identification of its products is factually deficient.  This District has held that the "liberal pleading requirements are designed to put the parties on notice generally as to the nature of the cause of action" and that there is no binding precedent requiring

a plaintiff to identify the basis of an infringement claim with the particularity DNP alleges. *Symbol Techs., Inc. v. Hand Held Prods., Inc.*, C.A. No. 03-102-SLR, 2003 WL 22750145, at *3 (D. Del. Nov. 14, 2003); *Fotomedia Techs.*, 2008 WL 4135906, at *2.  The Amended Complaint pleads the factual allegations necessary to put DNP on notice of NAII's claims.

III.   **NAII'S CLAIMS UNDER THE LANHAM ACT § 43(a) AND THE DELAWARE DECEPTIVE TRADE PRACTICES ACT SHOULD NOT BE DISMISSED BECAUSE NAII HAS PRUDENTIAL STANDING.**

The applicable Third Circuit authority makes clear that NAII may challenge false statements made by one of its competitors to redress harm to NAII's commercial interests caused by the statements.  The Third Circuit weighs five factors to find if a plaintiff has prudential standing to assert a claim for violation of the Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  *See Conte Bros. Auto, Inc. v. Quaker State-Slick 50, Inc.*, 165 F.3d 221 (3d Cir. 1998).  The court must examine (1) the nature of the plaintiff's alleged injury, (2) the directness or indirectness of the asserted injury, (3) the proximity or remoteness of the party to the alleged injurious conduct, (4) the speculativeness of the damages claim and (5) the risk of duplicative damages or complexity in apportioning damages.  *Id.* at 233.  All five factors weigh decisively for NAII's standing in this case.

A.   **NAII Has Standing Because NAII Is DNP's Commercial Competitor And Was Harmed By DNP's False Statements.**

NAII satisfies the first factor because it is a competitor harmed by DNP's false statements.   Under *Conte Bros.*, direct commercial competitors have standing to pursue claims under § 43(a), as do parties not in direct competition that meet a "reasonable interest" standard. *Id.* at 224-231.  The Third Circuit has definitively stated that the plain language of §43(a) "indicates that one need not be a competitor in order to bring a false advertising claim under the section." *Thorn v. Reliance Van Co., Inc.*, 736 F.2d 929, 930 (3d Cir. 1984).  NAII has alleged

that it has suffered, and will continue to suffer lost sales and profits because DNP's misleading advertisements and false statements have and will induce consumers to purchase DNP's beta-alanine product instead of NAII's Carnosyn® beta-alanine.  (D.I. 53 ¶ 83).

As the exclusive licensee and owner of the '361, '098 and '596 patents, NAII holds the rights to Carnosyn® Beta-alanine and derives revenue from Carnosyn® sales.  NAII alleges that NAII and DNP are competitors and that NAII has suffered lost sales of Carnosyn® beta-alanine, sold through its U.S. distributor, due to DNP's misleading advertisements.  (D.I. 53 ¶¶ 25, 48, 83).  As the patent rights holder, NAII clearly satisfies the "reasonable interest" standard and has standing to bring its claims.  The nature of NAII's injury is "of the type that Congress sought to redress by providing a private remedy for Lanham Act violations."  *Pernod Ricard USA LLC v. Bacardi U.S.A., Inc.*, 505 F. Supp. 2d 245, 253 (D. Del. 2007).   A patent holder has standing to sue a company that falsely advertised infringing products.  *See Logan v. Burgers Ozark Country Cured Hams*, 263 F.3d 447 (5th Cir. 2001); *Logan Farms v. HBH, Inc. DE*, 282 F. Supp. 2d 776, 797 (S.D. Ohio 2003).   Thus, NAII's substantial patent rights suffice to establish standing to bring a false-advertising claim against DNP for beta-alanine, which infringes the patent.  *Evco Tech. & Dev. Co. v. Buck Knives, Inc.*, No. 05-6198, 2006 WL 2773421 (E.D. Pa. 2006).

DNP erroneously argues that NAII has shown no harm because the Amended Complaint does not demonstrate the connection between DNP's press release and harm to NAII's business, reputation, products or services.   The Amended Complaint includes excerpts of a DNP advertisement which shows DNP's false and misleading statements word-for-word.  (D.I. 53 ¶ 45).  The press release, titled "DNP Tops U.S. Beta-alanine Imports in Quantity and Quality" discusses how DNP "continues to lead the nation in importing more Beta-alanine," how DNP will provide 5,000 metric tons of beta-alanine, and states DNP is the "finest and only source for

Japanese Beta-alanine in the U.S." (D.I. 53 ¶ 45).  The Amended Complaint clearly alleges that these assertions are false and misleading.  For instance, NAII's Carnosyn® Beta-alanine product is also sold in the United States through a distributor (CSI), but the DNP press release omitted this material fact.  Further, the DNP statements will likely cause confusion among consumers because the press release suggests that DNP is the only company supplying beta-alanine in the U.S. market.  Consumers who read the DNP advertisement would likely buy their beta-alanine from DNP because the press release suggests there are no other places to obtain beta-alanine in the United States.  DNP further attempts to confuse the issue by arguing that the misleading statements, which were made in May 2009, has no bearing on NAII patent royalties since the patents-in suit were not assigned to NAII until June 2010.  (D.I. 58, p. 11).  However, NAII was the exclusive licensee at that time.  Because NAII is a commercial competitor who has and continues to be harmed by DNP's false statements, the first *Conte Bros.* factor weighs in favor of prudential standing.

## B. The Second Factor Weighs In NAII's Favor Because Beta-Alanine Sales Directly Effect NAII's Revenue.

NAII satisfies the second factor because there is a direct injury.  This factor "addresses whether defendant's conduct directly affects either the plaintiff or the market in which it participates."  *Pernod Ricard*, 505 F. Supp. 2d at 254.  The Amended Complaint alleges that NAII has suffered and will continue to suffer direct injury by way of "damage to its business, reputation, and good will and has lost sales and profits" because of DNP's false statements. (D.I. 53 ¶ 83).  NAII does participate in the beta-alanine market because NAII holds the rights to Carnosyn® beta-alanine product and NAII obtains revenue from Carnosyn® sales.  (*Id.* ¶ 16-18, 24-25).  NAII revenues are harmed directly by DNP's misrepresentations, which create a "sufficient direct injury" so as to render NAII within the ambit of § 43(a). *Conte Bros.*, 165 F.3d

14

at 231 (citing *Serbin v. Ziebart Int'l Corp.*, 11 F.3d 1163, 1175 (3d Cir. 1993)).  A party who suffers "sufficient direct injury", while not a direct competitor, "could quite reasonably be regarded as a surrogate for such competitor" who has a "reasonable interest to be protected under section 43(a)".  *Id.* (citing *Serbin*, 11 F.3d at 1175) (internal quotations omitted).  NAII is a "surrogate" for a direct competitor because Carnosyn® is sold through a NAII distributor, and thus possesses the "reasonable interest" necessary to satisfy the prudential standing requirement. *Id.*

DNP incorrectly relies on *Joint Stock Soc'y v. UDV N. Am., Inc.,* 266 F.3d 164 (3d Cir. 2001) in support of its arguments on this factor.  The court in *Joint Stock* found this factor weighed against the plaintiffs because the plaintiffs, though claiming that the false advertising inhibited imports of Russian vodka into the United States, actually had not and did not import vodka into the United States.  *Id.* at 182.  Unlike *Joint Stock*, NAII does sell its Carnosyn® beta-alanine through its distributor in the United States. The second *Conte Bros.* factor therefore weighs in NAII's favor because the Amended Complaint alleges that DNP's misleading advertisements have and continue to directly lower NAII's profits when purchasers select DNP's beta-alanine products over NAII's Carnosyn® as a result of the advertisement.

### C.   NAII Satisfies The Third Factor Because NAII Is A Surrogate For A Direct Competitor, And Therefore Is In Commercial Competition With DNP.

DNP incorrectly states that NAII fails to meet the third factor because NAII does not compete with DNP.  A direct competitor will usually have a strong commercial interest. *Joint Stock*, 266 F.3d at 183 n.10.  Given NAII holds the rights to and derives revenue from Carnosyn® sales, NAII is a direct competitor or a "surrogate" direct competitor to DNP for purposes of the *Conte Bros.* test.  Again, DNP's comparison of the instant case to *Joint Stock* is incorrect because *Joint Stock* concerned parties in a vertical distribution chain, not a direct

competitor or surrogate relationship.  Further, as previously stated, the law in the Third Circuit

"indicates that one need not be a [direct] competitor in order to bring a false advertising claim

under [§ 43(a)]." *Thorn*, 736 F.2d at 930.   Therefore, NAII is sufficiently proximate to the

harmful conduct to satisfy the third *Conte Bros.* factor.

### D.     The Fourth Factor Weighs In NAII's Favor Because NAII's Damages Are Not Highly Speculative.

Again, DNP incorrectly relies upon the facts of *Joint Stock* to claim that NAII's damages

are "highly speculative", which does not concern parties that compete horizontally in the

marketplace.  Like DNP, NAII is a formulator, manufacturer and marketer of dietary supplement

materials.  (D.I. 53 ¶¶ 11, 25, 37, 38).  These two parties are horizontal or direct competitors in

the marketplace and are not on a vertical distribution chain, like those in *Joint Stock*.  Further,

NAII derives its revenue through Carnosyn® Beta-alanine sales in the marketplace (D.I. 53 ¶ 24)

and has suffered a quantifiable loss from the competition of DNP as a direct competitor.  NAII

has expressly alleged the quantity of beta-alanine products.  (D.I. 53 ¶ 40 ("DNP expected to

import more than 5,000 metric tons of food-type beta-alanine in 2009.  DNP's importation of

beta-alanine enables DNP to obtain an increased share of the bodybuilding market."); *id.* ¶ 48 ("a

search of a database tracking all imports by sea of beta-alanine shows that on December 6, 2009,

DNP imported 11,535 kilograms of beta-alanine from China."); *id.* Ex. 4).  Because NAII,

through the sales of its distributor, has sold Carnosyn® beta-alanine in the United States market,

"a lost sales and profits calculation would be concrete evidence of damages."  *Pernod Ricard*,

505 F. Supp. 2d at 254.  The fourth factor weighs in favor of NAII's prudential standing.

### E.     The Fifth Factor Weighs In NAII's Favor Because There Is Minimal Risk Of Multiple Plaintiffs In The Distribution Chain.

The risk of multiple plaintiffs in a distribution chain was a key factor in the *Conte Bros.*

case because there was a possibility that numerous people along a horizontal distribution chain

16

had standing to sue a defendant. *Conte Bros.,* 165 F.3d at 235. Again, these are simply not the facts present in this case. DNP attempts to confuse the issue by listing various classes of potential plaintiffs, none of which are patent rights holders who would be asserting their Lanham Acts claims in connection with patent infringement claims. Moreover, should other potential plaintiffs exist, "[e]xpanding standing to parties like [NAII] furthers the Lanham Act's underlying purpose by 'ferret[ing] out unfair competitive methods and protect[ing] businesses from the unjust erosion of their good will and reputation.'" *Pernod Ricard*, 505 F. Supp. 2d at 524 (quoting *Conte Bros.*, 165 F.3d at 236). For these reasons, the *Conte Bros.* factors weigh decisively in favor of NAII's prudential standing to assert its Lanham Act claim.

## IV.   THE DDTPA CLAIM SHOULD NOT BE DISMISSED BECAUSE NAII HAS PRUDENTIAL STANDING UNDER SECTION 43(A).

An Article III case-or-controversy requires ripeness and standing. *Clinton v. City of New York*, 524 U.S. 417, 429 & n.15 (1998). Standing under the DDTPA is "no broader than prudential standing under Section 43(a)." *Joint Stock,* 266 F.3d at 186. For the reasons discussed above, NAII has standing to assert Count VII and this claim should not be dismissed.

## V.   THE LANHAM ACT AND DDTPA CLAIMS SHOULD NOT BE DISMISSED.

### A.   NAII Adequately Pled A Claim For False Designation Of Origin Under Lanham Act § 43(a)(1)(A) (Count V) Because NAII Has Prudential Standing.

Courts apply the *Conte Bros.* five factor test to both false designation of origin and false advertising claims in determining whether the claim has prudential standing. *See Joint Stock*, 266 F.3d at 180-86; *Cook Drilling Corp. v. Halco Am., Inc.*, No. Civ. A. 01-2940, 2002 WL 84532, at *6-9 (E.D. Pa. Jan. 22, 2002). As noted above, NAII has prudential standing under the *Conte Bros.* test to assert its Lanham Act claim. Further, the Amended Complaint pleads

sufficient facts to allege a claim for false designation of origin under § 43(a)(1)(A).[2]   NAII alleges that DNP's false and misleading statements that are likely to cause confusion among consumers include the Japanese source of DNP's products.  (D.I. 53 ¶¶ 45-49).  The Amended Complaint further disputes the origin of DNP's products and cites evidence of DNP importation of beta-alanine from China.  (D.I. 53 ¶ 48).  The claim is adequately pled and the allegations are sufficient to allow DNP to submit a proper defense.  *Conley v. Gibson*, 355 U.S. 41 (1957).

### B.    NAII Sufficiently Pled A Claim For False Advertising Under Section 43(a)(1)(B) Of The Lanham Act (Count VII).

Liability under the Lanham Act arises if the commercial message or statement is either (1) literally false or (2) literally true or ambiguous, but has the tendency to deceive consumers. *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002); *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 943 (3d Cir. 1993).[3]   A claim for a § 43(a)(1)(B) violation satisfies Rule 12(b)(6) when "the complaint includes sufficiently detailed allegations regarding the nature of the alleged falsehood to allow [DNP] to make a proper defense."  *Robert Bosch LLC v. Pylon Mfg. Corp.*, 632 F. Supp. 2d 362, 365 (D. Del. 2009).  Here, the Amended Complaint includes specific allegations as to the date and

---

[2] The section provides: "in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any false designation of origin, false or misleading description of fact, or any false or misleading representation of fact, which  (A) is likely to . . . deceive . . . as to the origin . . . of his or her goods[.]"

DNP again cites irrelevant case law in support of its motion.  The *Freedom Card, Inc. v. JP Morgan Chase & Co.*, 432 F.3d 463 (3d Cir. 2005) case cited by DNP only concerned trademarks.  Section 43(a)(1)(A) is not limited to trademarks.

[3] Under the Lanham Act, one is liable for violating 43(a)(1)(B) if that person "in connection with any goods or services . . . uses in commerce any word, term, name . . . or any . . . false or misleading description of fact, or false or misleading representation of fact, which -- (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities[.]"

circumstances of the false press release and advertising as to the quality, source, and origin of DNP's beta-alanine. (D.I. 53 ¶ 45-48). NAII's amended complaint complies with Federal Rule of Civil Procedure 9(b), which "requires plaintiffs to plead fraud with particularity, specifying the time, place and substance of the defendant's alleged conduct." *United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149 F.3d 227, 234 (3d Cir. 1998). The facts pled are specific and the claim should not be dismissed.

In addition, DNP's comments are not mere puffery because it made a very specific statement regarding the quality of its beta-alanine, that it was the "finest" in the United States. *Castrol, Inc.,* 987 F.2d at 946 (finding that Pennzoil stating it is superior to others is not mere puffery because it left the consumer with the obvious conclusion that Pennzoil is superior to other brands). DNP's advertisements represented that its product was compared to other competitors' beta-alanine in the United States, and was found to be superior. Moreover, there need not be a direct comparison to a competitor for a statement to be actionable under the Lanham Act. *American Home Products Corp. v. Johnson & Johnson*, 654 F. Supp. 568 (S.D.N.Y. 1987). The Amended Complaint sufficiently pleads a claim for false advertising under § 43(a)(1)(B).

### C.   NAII Adequately Pled Count VII For Violation Of The DDTPA.

DNP incorrectly argues that NAII's DDTPA claim (Count VII) should be dismissed based on the arguments it raised regarding Section 43(a) of the Lanham Act (Count V). An inadequate pleading under a Lanham Act claim has no bearing on whether a DDTPA claim was adequately pled. *Monsanto Co. v. Syngenta Seeds, Inc*., 443 F. Supp. 2d 648, 653 (D. Del. 2006). A complaint is pled sufficiently if it avers that the defendant engaged in conduct that is within the scope of the DDTPA. *Enzo Life Scis., Inc. v. Digene Corp*., 295 F. Supp. 2d 424, 429 (D. Del. 2003). NAII has met this burden. NAII's complaint included excerpts (D.I. 53 ¶¶ 45-

49) from a press release and advertising in which DNP falsely represented that its goods are of a particular standard, quality, grade or model in violation of the DDTPA. *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 38 (2003); *Monsanto*, 443 F. Supp. 2d at 653; 6 Del. C. § 2532(a).  Also, NAII is entitled to seek an injunction against DNP under the DDTPA without proof of monetary damages, loss of profits or intent to deceive.  6 Del. C. § 2533(a). DNP's motion to dismiss the DDTPA claim should be denied.

### **CONCLUSION**

For all the foregoing reasons, DNP's motion to dismiss should be denied in its entirety.

Respectfully submitted,

OF COUNSEL:

POTTER ANDERSON & CORROON LLP

Richard J. Oparil
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC  20037
(202) 457-6000

By:  */s/ Richard L. Horwitz*
　　Richard L. Horwitz (#2246)
　　David E. Moore (#3983)
　　Hercules Plaza 6th Floor
　　1313 N. Market Street

Scott Chambers, Ph.D.
Kevin M. Bell
William J. McKeague, Ph.D.
Lacy Kolo, Ph.D.
PATTON BOGGS, LLP
8484 Westpark Drive, Ninth Floor
McLean, Virginia 22102
(703) 744-8000

　　Wilmington, DE  19899
　　Tel:  (302) 984-6000
　　rhorwitz@potteranderson.com
　　dmoore@potteranderson.com

*Attorneys for Plaintiffs Natural Alternatives International, Inc. Roger Harris, Mark Dunnett and Kenneth Johannsson*

Dated:  February 17, 2011
1001733 / 34341

20

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Richard L. Horwitz, hereby certify that on February 17, 2011, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on February 17, 2011, the attached document was electronically mailed to the following person(s):

John W. Shaw
Karen E. Keller
Young Conaway Stargatt & Taylor, LLP
1000 West Street
Brandywine Building, 17th Floor
Wilmington, DE  19801
jshaw@ycst.com
kkeller@ycst.com
*Attorneys for DNP International Co., Inc.*

M. Andrew Woodmansee
James J. Cekola
Morrison & Foerster LLP
12531 High Bluff Drive
Suite 100
San Diego, CA  92130-2040
woodmansee@mofo.com
jcekola@mofo.com
*Attorneys for DNP International Co., Inc.*

Francis DiGiovanni
Keith A. Walter
Connolly Bove Lodge & Hutz LLP
1007 N. Orange Street
Wilmington, DE  19899
fdigiovanni@cblh.com
kwalter@cblh.com
*Attorneys for Vital Pharmaceuticals, Inc.*

Kalina Pagano
Victoria Nicole Godwin
Luis Fernando Ugaz
Vital Pharmaceuticals, Inc.
1600 North Park Drive
Weston, FL  33326
kpagano@vpxsports.com
vickeyg@vpxsports.com
luisu@vpxsports.com
*Attorneys for Vital Pharmaceuticals, Inc.*

*/s/ Richard L. Horwitz*
Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

947955/34341